STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JOSEPH TARTAKOVSKY (CABN 282223)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7230
    Fax: (415) 436-7234
    Joseph.Tartakovsky@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMUEL POLANCO,<br><br>    Defendant. | CASE NO.: 3:21-cr-00069-RS-1<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: September 16, 2022<br>Time: 9:30 a.m.<br><br>Hon. Richard Seeborg |

    Defendant Samuel Polanco pleaded guilty to Counts One, Two, and Three of an Information that charged him with Felon-in-Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1), Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii), and Possession with Intent to Distribute Suboxone in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(E)(i).

    **I.**    **OFFENSE CONDUCT AND OTHER RELEVANT CONDUCT**

    On September 17, 2020, San Francisco Police Department officers arrested Mr. Polanco at the Soma Inn in San Francisco. He was found with a privately manufactured, unserialized pistol, or "ghost gun," in his front sweatpants pocket and a magazine with 10 rounds of unfired 9mm ammunition. Approximately 210 grams of methamphetamine and 45.33 grams of fentanyl were pulled from the folds of

his skin. In the Jaguar SUV he had been driving police found 28 rounds of unfired 9mm ammunition and 17 rounds of unfired .40 caliber ammunition. The car also contained small ziplock baggies, an ID in a woman's name, and a laptop—evidence suggestive of Polanco's drug dealing and property crime. PSR ¶ 10-12.

This arrest was Polanco's *third* firearm arrest by the SFPD in a nine-month period. PSR ¶ 47 (December 2019 arrest; conviction in April 2020), ¶ 65 (May 2020 arrest). Each arrest involved a different gun; each gun was loaded. These arrests, in turn, followed Polanco's eight felony convictions since 2013—or six in the three-and-a-half years before he was jailed in this case, about one every seven months. Moreover, the September arrest came while Mr. Polanco was on probation in Alameda and San Francisco for two separate convictions—one for assault with a deadly weapon, the other for burglary—probation sentences that he violated flagrantly enough to compel his San Francisco probation officer to move to revoke Polanco's probation.

The Information concerning the September 17, 2020 arrest conduct, charged in Counts One and Two, was filed on February 16, 2021. Dkt. 9. Polanco waived a detention hearing and was remanded to custody. Dkt. 7.

But new misconduct was committed after those charges were filed—and indeed as Polanco in pretrial confinement at Santa Rita Jail. Specifically, while plea negotiations on Counts One and Two were ongoing, the government learned that, beginning in March 2021, and continuing for a number of months, Polanco was receiving and distributing Suboxone sublingual strips (an opioid drug) to other inmates for money or commissary items. PSR ¶ 16, 19. The discovery of this offense in Santa Rita Jail led the government to file a First Superseding Information, adding Count Three, on June 24, 2021. Dkt. 19.

## II.  SENTENCING GUIDELINES CALCULATION

The government and defense calculate the Total Offense Level as 25, with a range of 110-137 months, assuming a Criminal History Category of VI, as follows:

COUNT ONE [18 U.S.C. § 922(g)(1)]

    a.    Base Offense Level, U.S.S.G. § 2K2.1(a)(4)(A)      20

    b.    Specific offense characteristics under U.S.S.G. Ch. 2
            § 2K2.1(b)(6)(B) – Used or possessed ammunition      +4
            in connection with another felony offense

|   |   |   |
|---|---|---|
| c. | Adjusted Offense Level for Count One | 24 |

COUNT TWO [21 U.S.C. § 841(a)(1), (b)(1)(B)(viii)]

|   |   |   |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5), (c)(7) | 26 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2 § 2D1.1(b)(1) – Firearm was possessed | +2 |
| c. | Adjusted Offense Level for Count Two | 28 |

COUNT THREE [21 U.S.C. §§ 841(a)(1) and (b)(1)(E)(i)]

|   |   |   |
|---|---|---|
| d. | Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5), (c)(17) | 6 |
| e. | Specific offense characteristics under U.S.S.G. Ch. 2 § 2D1.1(b)(4) – Object of offense was distribution of controlled substance in prison, correctional facility, or detention facility | +2 |
| f. | Adjusted Offense Level for Count Three | 8 |
| g. | **Groups of Closely Related Counts**<br>Offenses covered by USSG § 2K2.1 and § 2D1.1 are grouped under § 3D1.2(d)<br>Group Offense Level, U.S.S.G. § 3D1.3(a) | 28 |
| h. | **Acceptance of Responsibility:** | -3 |
| i. | **TOTAL OFFENSE LEVEL:** | 25 |

Probation calculates a Total Offense Level of 30 by (1) determining a Converted Drug Weight that results in a Base Offense Level of 26 (PSR ¶ 25), then (2) adding two of the three Specific Offense Characteristics to which the parties agreed (possessing a dangerous weapon, §2D1.1(b)(1)); distributing a controlled substance in a correctional facility, §2D1.1(b)(4)) but omitting the third (using or possessing ammunition in connection with another felony offense, § 2K2.1(b)(6)(B)). PSR ¶ 26-27. The parties, by contrast, added these Specific Offense Characteristics to the offense count to which they pertain, not to the Base Offense Level produced by the Converted Drug Weight. The U.S. Sentencing Commission has informed the undersigned that it takes the position that, under the Guidelines, it is proper to calculate the Base Offense Level using the Converted Drug Weight for all relevant drugs, and then to apply Specific Offense Characteristics—even if that means that a Specific Offense Characteristic (like, here, drug-selling in jail) only applies to one count. This is consistent with the Sentencing Guidelines and

likely correct, although the undersigned found no case law on the subject. In any event, the government, in adherence to the plea agreement, recommends the sentence set out below.

### III.  GOVERNMENT'S SENTENCING RECOMMENDATION

The government agreed in the plea agreement to recommend a sentence of 84 months. Dkt. 22 at ¶ 15. This is a downward variance from the range associated with the Guidelines calculation, but it is nevertheless a very significant sentence. And it is merited by the circumstances.

Mr. Polanco presents a picture of a determined, career criminal who steadily endangers the public. Notable is the astonishing frequency of his felony conduct; the futility of prior judicial sanctions; and the fact that his misbehavior persisted even after the defendant had made his appearance before this Court.

*First*, Polanco's offense should be viewed in the context of his criminal history, which is extensive across multiple categories, as well as continuous, recent, and marked by re-offending:

- *Firearms*: Polanco has been involved with guns since at least 2014, when a warrant was issued against him for exhibiting a firearm in violation of Cal. Penal Code 417(a)(2). His most recent arrests show his escalating menace to the public—three arrests, for possessing three different loaded handguns, in nine months. The first came on December 19, 2019, when Polanco was arrested in his apartment with a stolen pistol and ammunition, after a burglary investigation led to him. PSR ¶ 47. Then, on May 19, 2020, a 911 caller reported men (Polanco among them) on Filbert Street, passing around a pistol clip; police arrived, searched a backpack identified by witnesses as Polanco's, and found a pistol. PSR ¶ 65 & Incident Report. In Polanco's jacket, officers found suspected methamphetamine and fentanyl. Finally, on September 17, 2020—the arrest underlying the instant gun charge—Polanco was again booked for firearm and ammunition possession.

- *Felony convictions for dangerous crimes:* Polanco was convicted on March 7, 2017 for felony assault with a deadly weapon under Cal. Penal Code § 245(a)(4). He remains on probation for that offense. PSR ¶ 43. On December 29, 2014, he was convicted for driving in willful or wanton disregard of safety while fleeing, in violation of California Vehicle Code § 2800.2(a). PSR ¶ 41.

- *Violence-related arrests:* Polanco has ten arrests for offenses involving some measure of violence or potential violence—including for robbery, concealing knives, and assault with a deadly weapon.[1]  PSR ¶ 39, 40, 43, 51, 52, 53, 55, 57,

---

[1] According to his CLETS report: December 22, 2013: arrested in connection with a leaded cane or billy club; March 9, 2014: arrested for threatening crime with intent to terrorize (and later *convicted*

UNITED STATES' SENTENCING MEMORANDUM
3:21-cr-00069-RS-1                          4

59, 64.

- *Property crime*: For over a decade Polanco has provoked a steady stream of arrests, warrants, or convictions for larceny, burglary, grand theft, vehicle theft, possession of burglary tools, and receipt of stolen property. PSR ¶ 39, 42, 44, 45, 46, 47. He has six convictions for burglary or grand theft. PSR ¶ 39, 42, 53, 44, 45, 46. Between 2008 and 2020 he was arrested (or faced a warrant) seventeen times for these property-related crimes.[2] In his apartment, after his December 2019 arrest, police found a hoard of other peoples' property: IDs, a laptop, rock-climbing gear, cell phones, and more. PSR ¶ 47. The firearm found there had itself been reported stolen after a car break-in. *Id.* Some purloined items found in Polanco's possession hint ominously at criminality beyond mere theft: a credit card found in Polanco's backpack at the time of his May 2020 arrest had "what appeared to be dried blood," and it was later "revealed that the person of the name on the located credit card has been reported missing."[3]

Polanco, at the time of his offenses of conviction, was on probation in San Francisco. PSR ¶ 49.

*Second*, this prosecution features the highly unusual circumstance of a defendant committing a new federal crime while in federal custody on existing charges. This occurred, no less, after the defendant had tentatively agreed to accept responsibility for his conduct. Put another way, Polanco was prepared to accept responsibility for drug distribution activity—then engaged in *new* drug distribution activity. His acceptance of responsibility was, evidently, limited only to past conduct. But acceptance of responsibility, under U.S.S.G. F. § 3E1.1, App. Note, is not so qualified a concept. It can turn on truthfully admitting to conduct comprising the offenses of conviction, but not only that: another

---

of assault); October 18, 2011: arrested for attempted robbery; October 9, 2012: arrested for robbery (and later *convicted* of felony grand theft; a charge of carrying a knife was dropped); June 13, 2013: arrested for robbery; August 18, 2013: arrested for robbery; June 28, 2014: arrested for robbery; June 10, 2015: arrested for carrying a concealed dirk or dagger; August 15, 2015: arrested for carrying a concealed stolen weapon; October 9, 2015: arrested for assault with a deadly weapon (not a firearm).

[2] According to his CLETS report: March 28, 2008: arrested for receiving stolen property; August 18, 2013: arrested for receiving stolen property; December 22, 2013: arrested for grand theft; November 11, 2014: arrested for vehicle theft and attempt to receive stolen property; June 10, 2015: arrested for vehicle theft June 26, 2015: arrested for burglary; September 3, 2016: arrested for possessing burglary tools (and later *convicted* of grand theft); November 8, 2016: arrested for grand theft; December 16, 2016: arrested for possession of burglary tools; January 20, 2017: arrested for robbery (and later *convicted* of assault with a deadly weapon); April 20, 2017: warrant issued for grand theft (and later *convicted* of burglary); May 8, 2017: arrested for burglary; January 6, 2018: arrested for burglary, receiving stolen property, and grand theft (and later *convicted* of burglary); August 17, 2018: arrested for burglary, possessing burglary tools, and receiving stolen property (and later *convicted* of burglary); October 10, 2019: arrested for grand theft; December 19, 2019: arrested for burglary and receiving stolen property (and later *convicted* of burglary) (in addition to firearm possession); May 19, 2020: arrested for possessing burglary tools and possessing stolen property (in addition to firearm possession).

[3] Motion to Revoke Probation, SF Probation Officer L. Talavera (Court Date 5/22/20), at 2.

UNITED STATES' SENTENCING MEMORANDUM
3:21-cr-00069-RS-1                                         5

"appropriate consideration" is "voluntary termination or withdrawal from criminal conduct or associations." This implies the termination of ongoing conduct. Nevertheless, as noted below, the government has agreed to credit Mr. Polanco for acceptance of responsibility under the Guidelines. But the government notes the circumstances surrounding Count Three of the Information.

*Third*, Polanco's conduct should be view in light of that fact that Mr. Polanco has many chances to alter his path and many grants of judicial leniency. His San Francisco probation officer best captured the exasperation that many have felt about his ceaseless misconduct (as summarized in PSR ¶ 47):

> The probation officer stated Polanco is a danger to the community and filed two pending motions to revoke his probation. [She] noted that Polanco received mandatory supervision in lieu of incarceration three times and that he violated the terms of supervision each time. She said Polanco has evidently committed multiple offenses while on probation: "In the five months since being granted probation, Polanco has suffered two arrests involving a firearm and illegal narcotics." (His May 2020 arrest came less than a month after Polanco began a probation term.) She continued to say, despite being given yet another opportunity through a new grant of probation, Mr. Polanco has chosen to continue to engage in a high-risk lifestyle in such a way that poses a threat to the safety and security of the community. He demonstrates a lack of interest in accessing services that can assist in addressing the factors contributing to his current criminal lifestyle…. She noted that Polanco was "given the opportunity to participate in Drug Court and failed to engage."

## IV.  CONCLUSION

The government respectfully recommends a sentence of 84 months.

DATED:   September 9, 2022                                           Respectfully submitted,

                                                                     STEPHANIE M. HINDS
                                                                     United States Attorney


                                                                      */s Joseph Tartakovsky*
                                                                     JOSEPH TARTAKOVSKY
                                                                     Assistant United States Attorney